## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**James Aaron Cooper II, Petitioner Below,**
**Petitioner**

**FILED**

May 24, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 11-0929** (Cabell County 08-C-411)

**Ronald Casto, Administrator, Respondent Below,**
**Respondent**

## MEMORANDUM DECISION

Petitioner James Aaron Cooper II, by counsel Ronald G. Salmons, appeals the September 28, 2010 order of the Circuit Court of Cabell County denying his petition for writ of habeas corpus. Respondent Casto, by counsel Thomas W. Rodd, has filed a response, to which petitioner has filed a reply[1].

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2001, petitioner was indicted on one count of attempted first degree robbery and one count of first degree robbery. Following a jury trial in September of 2002, petitioner was found guilty of both counts and sentenced to a term of incarceration of twenty years for attempted first degree robbery and a term of incarceration of forty years for first degree robbery, said sentences to run consecutively. Petitioner appealed this conviction, and the Court affirmed the same in *State v. Cooper*, 217 W.Va. 613, 619 S.E.2d 126 (2005). On January 2, 2007, petitioner filed a motion in arrest of judgment arguing that the indictment in his criminal case was defective because it contained definitions of attempted robbery and first degree robbery that were not in effect at the time of the crimes' commission. Following a hearing, the circuit court upheld petitioner's conviction for first degree robbery but vacated his conviction for attempted first degree robbery. Petitioner was then resentenced to serve forty years of incarceration for his conviction of first degree robbery. Petitioner appealed this ruling, and the Court refused his appeal by order entered on October 24, 2007. On May 9, 2008, petitioner filed the instant petition for writ of habeas corpus; thereafter various attorneys were appointed to represent him in the circuit court. An amended petition was filed in March of 2009, after which the circuit court denied the petition without holding an evidentiary hearing.

---

[1] The petition in this matter originally listed Teresa Waid as respondent. However, petitioner has subsequently been incarcerated in a different facility, and the appropriate administrator has been substituted as respondent in this matter.

1

On appeal, petitioner alleges two assignments of error. First, he alleges that the circuit court erred in denying his petition below without first holding an evidentiary hearing to develop his contentions, including his allegation of ineffective assistance of counsel. Citing the Fourth Circuit Court of Appeals decision in *Sheftice v. Boles*, 377 F.2d 423 (4th Cir. 1967), petitioner argues that because he alleged federal constitutional violations in his state court habeas proceeding, the circuit court was required to grant him a full evidentiary hearing. Further, petitioner argues that he has never had an opportunity to examine his prior counsel, and alleges that it was error to deny him that opportunity. Additionally, petitioner asserts that his petition raises collateral issues which have not previously been fully and fairly litigated. In his second assignment of error, petitioner alleges that the circuit court erred in its findings of fact and conclusions of law in the order from which he appeals. Specifically, petitioner argues that the circuit court erred in finding that certain issues were waived and that other issues were mere recitals and lacked development. Petitioner also argues that the circuit court erred in finding certain contentions moot because he never had an evidentiary hearing during which to factually develop them. According to petitioner, certain issues that the circuit court found to be fully and fairly litigated were outside the scope of his prior appeal and therefore should have been considered on the merits.

This Court has previously held that

> [i]n reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). After careful consideration of the parties' arguments, this Court concludes that the circuit court did not abuse its discretion in denying the petition for writ of habeas corpus. The Court finds no merit in petitioner's contention that *Sheftice* mandates that he receive an evidentiary hearing. In fact, in quoting that decision, petitioner omitted relevant language that is contrary to his assertion. That opinion states that "the West Virginia statute clearly states that a matter will not be considered to have been previously adjudicated unless there has been a full and fair hearing in the state courts, *or a waiver by the prisoner . . . .*" *Sheftice v. Boles*, 377 F.2d 423, 427 (4th Cir. 1967) (emphasis added). In regard to petitioner's second assignment of error, the court finds no error in the circuit court's findings of fact and conclusions of law. Having reviewed the circuit court's "Order Denying Petition For Writ Of Habeas Corpus" entered on September 28, 2010, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we find no error in the decision of the circuit court and its September 28, 2010 order denying the petition for writ of habeas corpus is affirmed.

Affirmed.

**ISSUED:** May 24, 2013


**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

FILED

2011 SEP 28 A 9:43

CABELL CHANDLER
CIRCUIT CLERK
CABELL WV

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

JAMES AARON COOPER, II,
Petitioner

v.

Civil Action No. 08-C-411
Chief Judge Dan O'Hanlon

TERESA WAID, Warden,
Respondent

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

This matter came before this Court on May 9, 2008, when the Petitioner filed his pro se Petition for Writ of Habeas Corpus as Subjiciendum under W.Va. Code § 53-4A-1 and eligibility for assignment of legal counsel. Upon reviewing the Petition, this Court appointed Jon Hoover, Esq., to represent the Petitioner in this matter. This matter came on for a hearing before this Court on September 23, 2010.

This Court has considered the Petition, the supporting memoranda of law, the response of the State, and has reviewed all pertinent legal authorities. As a result of these deliberations, and for the reasons set forth below, this Court has concluded that it does not need to hold a hearing to determine Petitioner's issues. This Court has also concluded that the Petitioner failed to establish a basis for his Petition and that Petitioner's Petition for a Writ of Habeas Corpus Ad Subjiciendum should be denied.

### ISSUES

Petitioner numbered his assignments of constitutional error to correspond to that issue's number in the "Losh v. McKenzie" list. Petitioner lists the following issues in his amended petition:

1

1. Trial court lacked jurisdiction
2. Statute under which conviction was obtained was unconstitutional
3. Indictment shows on face no offense was committed
4. Prejudicial pre-trial publicity
11. Denial of counsel
12. Unintelligent waiver of counsel
14. Consecutive sentences from same transaction
15. Coerced confessions
16. Suppression of helpful evidence by prosecutor
17. State's knowing use of perjured testimony
18. Falsification of a transcript by a prosecutor
20. Information in pre-sentence report erroneous
21. Ineffective assistance of counsel
23. Irregularities in arrest
24 Excessiveness or denial of bail
26. Illegal detention prior to arraignment
27. Irregularities or errors in arraignment
28. Challenges to the composition of grand jury or its procedures
30. Defects in indictment
34. Refusal to subpoena witnesses
35. Prejudicial joinder of defendants
37. Non-disclosure of grand jury minutes
38. Refusal to turn over witness notes after witness has testified
41. Constitutional errors in evidentiary rulings
42. Instructions to the jury
43. Claims of prejudicial statements by trial judges
44. Claims of prejudicial statements by prosecutor
45. Sufficiency of evidence
46. Acquittal of co-defendant on same charge
47. Defendant's absence from part of the proceedings
48. Improper communications between prosecutor or witness and jury
50. Severer sentence than expected
51. Excessive sentence
53. Amount of time served on sentence, credit for time served

Those numbers skipped are stipulated by the Petitioner as waived.


**FACTS AND PROCEDURAL HISTORY**

In March, 2001, Petitioner's co-defendant, Daniel Wagoner, drove up to Petitioner for the

purpose of purchasing crack cocaine from the Petitioner. Petitioner climbed into the passenger

seat of Mr. Wagoner's truck, and the two drove around Huntington for two hours smoking crack.

2

Mr. Wagoner had falsely represented to Petitioner that Mr. Wagoner had money to pay for the crack, and Petitioner had provided Mr. Wagoner with four rocks, each priced at $50.00.

After driving around for two hours, Mr. Wagoner stated to Petitioner that he intended to go home. Petitioner demanded payment for the drugs and became irate and physically threatening. Because Mr. Wagoner could not pay, Petitioner decided to recover his money by forcing Mr. Wagoner to commit several robberies. The first attempt was at a convenience store. Mr. Wagoner evidently entered with no weapon and demanded money. The clerk pushed an alarm button, and Mr. Wagoner fled. The second robbery was at a grocery store, and Mr. Wagoner used a box cutter to threaten the store employee.

While Mr. Wagoner was inside the store, Petitioner evidently moved into the driver's seat of the truck. Mr. Wagoner got in the passenger seat, and Petitioner drove to a nearby house to purchase another rock of crack. A few minutes later, a police officer, armed with a description of the truck, stopped the truck. Petitioner was removed from the driver's seat, and Mr. Wagoner was removed from the passenger seat. Mr. Wagoner was taken to both crime scenes where he was identified by both victims.

A search of the truck found a brown jacket similar to the one identified by witnesses with a box cutter in its pocket. A wad of money, between $80.00 and $90.00, was found underneath the truck's armrest, and a rock of crack cocaine was found underneath the driver's seat. A plastic grocery store bag was found in the truck's toolbox containing $35.00 in cash and $13.00 in food stamps.

Mr. Wagoner was arrested and later pled guilty to an information charging him with one count of first-degree robbery. He was sentenced to ten years. The Supreme Court opinion in State v. Cooper states that, after testifying against the Petitioner, upon motion of his attorney and

3

without objection from the prosecuting attorney, a circuit judge released Mr. Wagoner on probation for the balance of his term. 217 W.Va. 613, 619 S.E.2d 126 (2005). This statement in the Supreme Court opinion does not appear to be correct.

Mr. Wagoner's attorney did file a motion to reduce his sentence on August 5, 2002, which motion was taken under advisement by Judge Alfred Ferguson by order entered September 10, 2002. On December 12, 2002, Judge Ferguson entered an order denying Mr. Wagoner's motion to reduce his sentence. An order of commitment for Mr. Wagoner was entered on December 16, 2002, committing Mr. Wagoner to the custody of the Division of Corrections to serve a ten year sentence for first degree robbery. This Court spoke with the bookkeeping department at the Division of Corrections ("DOC"), and DOC reported that Mr. Wagoner served from his sentencing date on November 16, 2002, until he was granted parole on July 12, 2005. Mr. Wagoner was discharged from parole on August 30, 2006.

Petitioner was also arrested and indicted in Indictment No. 01-F-264 for one count of Attempted First Degree Robbery and one count of First Degree Robbery. A trial was held in early September, 2002, and the jury found the Petitioner guilty of Attempted First Degree Robbery as contained in Count I of the indictment and guilty of First Degree Robbery as contained in Count II of the indictment. Petitioner was sentenced to the penitentiary for 20 years on Count I, and 40 years on Count II, sentences to run consecutively.

Petitioner appealed a circuit court order denying him a new trial to the Supreme Court of Appeals. Petitioner raised four points of error on appeal. First, he alleged that the prosecuting attorney improperly withheld the address of a potential witness who might have provided exculpatory evidence. Second, he alleged that the prosecuting attorney wrongfully concealed information about Mr. Wagoner's guilty plea and sentence from both the Petitioner and the jury.

4

Third, Petitioner asserted that it was improper for a circuit judge, upon learning that the Petitioner had been arrested for possession of crack cocaine while released on bond, to revoke his bond without either the Petitioner and/or his counsel being present. Finally, Petitioner asserted that evidence presented at a hearing on a motion for a new trial was sufficient to establish that the Petitioner was denied a fair trial, but that the trial court improperly disregarded that evidence.

The Supreme Court affirmed the conviction in State v. Cooper and held the following:

(1)     State's disclosure approximately one week before trial of address of co-defendant's ex-wife and written copies of her alleged statements to police indicating that defendant was not involved in robberies did not amount to Brady violation;

(2)     State's failure to disclose that counsel for co-defendant filed motion for reduction of sentence did not violate Brady; and

(3)     Revocation of defendant's pretrial release on bond and forfeiture of defendant's cash contribution to bond in defendant's absence did not warrant a new trial.

(4)   · Circuit court did not abuse its discretion in denying the motion for a new trial.

217 W.Va. 613, 619 S.E.2d 126 (2005).

Petitioner then filed a motion in arrest of judgment on January 2, 2007, arguing that Petitioner's indictment was defective because it contained definitions of attempted robbery and first degree robbery that were not in effect at the time of the commission of the crimes. This motion was heard by the Court, and the Court entered an order on February 22, 2007, ordering that Petitioner's sentence and conviction on Count II of the indictment (first degree robbery) is upheld and Petitioner's sentence and conviction on Count I (attempted robbery) is vacated. Petitioner was then re-sentenced to serve forty (40) years for Count II only. This Court entered a new commitment order to this effect on September 16, 2010.

Petitioner appealed the order granting the vacated sentence and conviction for Count I but upholding the sentence and conviction for Count II. The Supreme Court declined to take up the appeal.

Petitioner filed the instant petition for writ of habeas corpus on May 9, 2008. On August 8, 2008, Joseph Adams, Esq., was appointed to represent the Petitioner. Mr. Adams soon thereafter joined the office of the Cabell County Prosecutor and was required to withdraw from the representation of the Petitioner. Kit Thornton, Esq., was appointed on September 10, 2008. Mr. Thornton filed a motion to withdraw on October 24, 2008. Jon Hoover, Esq., was appointed on November 17, 2008. The amended petition was filed in a timely manner on February 27, 2009. The State's response was due by March 28, 2009, and was filed in an untimely manner on April 17, 2009. On November 13, 2009, Petitioner's counsel filed a motion to withdraw from the case. Petitioner filed a pro se letter to this Court on November 13, 2009, objecting to the withdrawal of Jon Hoover, Esq. This matter was then set for hearing on September 23, 2010.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The following issues were not developed in any way in the amended petition and consisted merely of the recitation of the grounds raised:

1.  Trial court lacked jurisdiction
2.  Statute under which conviction was obtained was unconstitutional
12. Unintelligent waiver of counsel
15. Coerced confessions
18. Falsification of a transcript by a prosecutor
20. Information in pre-sentence report erroneous
27. Irregularities or errors in arraignment
28. Challenges to the composition of grand jury or its procedures
45. Sufficiency of evidence
46. Acquittal of co-defendant on same charge
48. Improper communications between prosecutor or witness and jury

Petitioner's mere recitation of enumerated grounds without detailed factual support does not justify issuance of a writ of habeas corpus, the appointment of counsel, and the holding of a hearing. Perdue v. Coiner, 156 W.Va. 467, 194 S.E.2d 657 (1973). A petition must specifically state in detail the underlying facts that support the claim; mere recitation of grounds without detailed factual support does not justify the issuance of a writ, the appointment of counsel, and the holding of a hearing. Losh v. McKenzie, 166 W.Va. 762, 277 S.E.2d 606 (1981).

Petitioner's statements with regard to the above issues are blanket assertions and do not provide any adequate factual support from which the circuit court could make a ruling. These skeletal assertions do not preserve these claims for hearing. Hatcher v. McBride, 221 W.Va. 760, 656 S.E.2d 789 (2007). There is a presumption of regularity of court proceedings, and that the court performed its duty in every respect as required by law. Scott v. Boles, 150 W.Va. 453, 147 S.E.2d 486 (1966) Therefore, Petitioner must carry the burden of showing error in the judgment of which he complains, and these bare assertions of error do not carry that burden. Id.

Petitioner has not provided this Court with any examples, analysis, explanation, or legal citiaton of the errors alleged, therefore, these undeveloped issues are dismissed. In the absence of any supporting arguments or authority, these assignments of error are found against the Petitioner and deemed to have been waived.

The following issues were developed with factual statements in the amended petition:

| | |
|---|---|
| 3. | Indictment shows on face no offense was committed |
| 4. | Prejudicial pre-trial publicity |
| 11. | Denial of counsel |
| 14. | Consecutive sentences from same transaction |
| 16. | Suppression of helpful evidence by prosecutor |
| 17. | State's knowing use of perjured testimony |
| 21. | Ineffective assistance of counsel |
| 23. | Irregularities in arrest |
| 24. | Excessiveness or denial of bail |
| 26. | Illegal detention prior to arraignment |

7

30. Defects in indictment
34 Refusal to subpoena witnesses
35. Prejudicial joinder of defendants
37. Non-disclosure of grand jury minutes
38. Refusal to turn over witness notes after witness has testified
41. Constitutional errors in evidentiary rulings
42. Instructions to the jury
43. Claims of prejudicial statements by trial judges
44. Claims of prejudicial statements by prosecutor
47. Defendant's absence from part of the proceedings
50. Severer sentence than expected
51. Excessive sentence
53. Amount of time served on sentence, credit for time served

**Issue 3 – Indictment on face shows no offense was committed**
**Issue 30 – Defects in Indictment**
**Issue 42 – Instructions to the jury**

With regard to these issues, Petitioner states that Count I of the indictment charges Petitioner with aiding and abetting an attempted robbery. Petitioner alleges under each of these assignments of error that attempted robbery is not a separate criminal offense in West Virginia for the purpose of sentencing and cites W.Va. Code § 61-2-12(a)(2).

What Petitioner may be failing to understand is that there were two separate instances, the convenience store and the grocery store. Under the section, the attempt to commit robbery is a crime in itself. State ex rel. Vascovich v. Skeen, 138 W.Va. 417, 76 S.E.2d 283 (1953). The date of this case shows that attempt to commit robbery has been a crime in itself for some time in West Virginia.

These assignments of error are, however, moot as the Court vacated the sentence and conviction for Count I by order entered February 22, 2007.

This issue is decided against the Petitioner.

**Issue 4 – Prejudicial pre-trial publicity**

8

With regard to this issue, Petitioner states that newspaper articles in the Herald-Dispatch incorrectly identified Petitioner as the sole participant in the robberies. Petitioner does not allege any further specific harm from these statements. Testimony at trial showed there were two perpetrators, thus, this Court finds no alleged harm in the news stories. Petitioner has not met his burden to show this error.

This issue is decided against the Petitioner.

**Issue 11 – Denial of counsel**
**Issue 24 – Excessiveness or denial of bail**
**Issue 47 – Defendant's absence from part of the proceedings**

These assignments of error concern the revocation of Petitioner's pre-trial bond. Petitioner was arrested in March, 2001, and later released on bond. He was arrested on August 7, 2001, for possession of crack cocaine, and by order dated August 23, 2001, Petitioner's bond was revoked and his cash contribution to that bond was also forfeited. Petitioner argues that it was a constitutional violation because neither he nor his attorney were notified or present at the hearing.

Petitioner raised this issue in his direct appeal presented before the West Virginia Supreme Court of Appeals. The Supreme Court ruled that "[a]fter carefully reviewing the record, we see nothing to indicate that the revocation of [Petitioner's] bond and forfeiture of [Petitioner's] cash contribution had anything to do with the fairness of [Petitioner's] trial. We therefore find no abuse of discretion by the circuit court in declining to review [Petitioner's] arguments regarding the bond in the context of the motion for a new trial."

Post-conviction habeas corpus proceedings provide Petitioner with the opportunity to raise any collateral issues which have not been fully and fairly litigated. Markley v. Coleman, 215 W.Va. 729, 601 S.E.2d 49 (2004). This issue has been previously and fully adjudicated in

9

Petitioner's appeal of his motion for a new trial. The Supreme Court found nothing in these claims that affected the fairness of Petitioner's trial. West Virginia Code Section 53-4A-1(d) allows a petition for post-conviction habeas relief to advance contentions or grounds which have been previously adjudicated only if those contentions or grounds are based upon subsequent court decisions which impose new substantive or procedural standards in criminal proceedings that are intended to be applied retroactively. Waldron v. Scott, 222 W.Va. 122, 663 S.E.2d 576 (2008).

Petitioner is not alleging any new law or new procedures that should be applied to these issues, thus, these issues are deemed to be res judicata and are decided against the Petitioner.

**Issue 14 – Consecutive sentences from same transaction**

Petitioner refers to the original pro se Petition for this issue. Petitioner's pro se explanation is difficult to follow. This issue has been rendered moot since Petitioner's sentence and conviction for Count I for the attempted robbery of the convenience store were vacated by order entered February 22, 1007. This issue is decided against the Petitioner.

**Issue 16 – Suppression of helpful evidence by the prosecutor**

This issue concerns the address and statements of Anne Marie Dailey who is the ex-wife of the co-defendant, Mr. Wagoner's. Petitioner argues that the prosecuting attorney failed to turn over the address of Ms. Dailey and failed to provide any notes or written copies of the exculpatory statements made by her, and thereby deprived Petitioner of a fair trial as guaranteed by the due process clause of the United States and West Virginia Constitutions. *See* Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.E.2d 215 (1963).

Ms. Dailey was evidently not called as a witness during Petitioner's trial. Instead, she testified at a post-trial hearing, and her testimony involved her statements to a police officer on

10

March 19, 2001 (two days after the robberies), that Mr. Wagoner had told her that he did not commit the robberies. Ms. Dailey also testified that in January, 2002, she spoke to the same police officer, but gave a different statement, to the effect that Mr. Wagoner had admitted to committing the robberies alone and, after the fact, picked up Petitioner. Ms. Dailey further testified that Mr. Wagoner had told her that Petitioner stated "You look buzzed, let me drive the vehicle . . . ." Ms. Dailey was, however, evidently wary of Mr. Wagoner's story, because she added "But I also told [the officer] that I was lied to constantly by Daniel Wagoner. So, I don't really know what to believe."

Ms. Dailey further testified that both statements were recorded by the police officer in writing. Ms. Dailey also claimed that she had spoken with the prosecuting attorney's office regarding her conversations with Mr. Wagoner, and had given the prosecuting attorney her address on the expectation that she would be subpoenaed.

As for the statements given by Ms. Dailey, the police officer testified that no such written statements were taken. The officer did recall speaking with Ms. Dailey on several occasions, but also recalled that her statements always implicated Petitioner in the crime. The State argued that the first time it learned that Ms. Dailey intended to offer testimony exculpatory to the Petitioner was on August 26, 2002, approximately one week before the trial.

The record indicates that the prosecuting attorney spoke with Ms. Dailey by phone, learned of the potentially exculpatory evidence, and that the prosecuting attorney then informed Petitioner's trial counsel of this information.

At the post-trial hearing, the Circuit Court considered Ms. Dailey's testimony regarding her statements to the police officer, and found her testimony that the statements were recorded by the officer to be contradictory and not entirely credible. The Circuit Court did, however, find to

11

be credible the statements of the police officer who stated that he had made no recordings of her various statements, and that in most of Ms. Dailey's statements, she indicated that Petitioner was guilty. The Circuit Court found that the first notice to the State that Ms. Dailey intended to give evidence exculpatory to the Petitioner was on August 26, 2002. The Court also found that the State immediately notified Petitioner's trial counsel, thus, no Brady violation occurred.

Petitioner raised this issue in his direct appeal presented before the Supreme Court. The circuit court found nothing persuasive to show that Ms. Dailey gave the State evidence that was favorable to the Petitioner because it was exculpatory, or because it was impeaching, prior to August 26, 2002. The Supreme Court ruled that the circuit court did not abuse its discretion in determining there was no Brady violation. The Circuit Court explicitly found that the State provided the content of Ms. Dailey's statements to the Petitioner prior to trial, and the Supreme Court found nothing in the record demonstrating that Petitioner was prevented from putting this evidence to effective use at trial.

Post-conviction habeas corpus proceedings provide Petitioner with the opportunity to raise any collateral issues which have not been fully and fairly litigated. Markley v. Coleman, 215 W.Va. 729, 601 S.E.2d 49 (2004). This issue has been previously and fully adjudicated in Petitioner's appeal of his motion for a new trial. The Supreme Court found nothing in these claims that affected the fairness of Petitioner's trial. West Virginia Code Section 53-4A-1(d) allows a petition for post-conviction habeas relief to advance contentions or grounds which have been previously adjudicated only if those contentions or grounds are based upon subsequent court decisions which impose new substantive or procedural standards in criminal proceedings that are intended to be applied retroactively. Waldron v. Scott, 222 W.Va. 122, 663 S.E.2d 576 (2008).

12

Petitioner is not alleging any new law or new procedures that should be applied to these issues, thus, these issues are deemed to be res judicata and are decided against the Petitioner.

**Issue 17 – State's knowing use of perjured testimony**
**Issue 41 – Constitutional errors in evidentiary rulings**
**Issue 44 – Claims of prejudicial statements by prosecutor**

Petitioner alleges he was denied a fair trial because the prosecuting attorney failed to reveal details surrounding Mr. Wagoner's guilty plea and sentence. Mr. Wagoner entered into an agreement with the prosecuting attorney to plead guilty to an information charging him with first-degree robbery on October 2, 2001. As a condition of the plea, the prosecuting attorney agreed to drop a possession charge and not object to a minimum sentence. In return, Mr. Wagoner agreed to cooperate with the State in Petitioner's case.

On March 29, 2002, Judge Alfred Ferguson sentenced Mr. Wagoner to ten years in the penitentiary. All of these details concerning the plea agreement and sentence were known to Petitioner prior to trial.

On August 5, 2002, Mr. Wagoner filed a motion to reduce his sentence, asking that the circuit court reduce the sentence to a term of probation. Petitioner alleges that the prosecuting attorney knew of the motion to reduce sentence, and that the existence of this motion provided a basis for Mr. Wagoner to lie and that the prosecuting attorney's failure to reveal this detail in his questioning of Mr. Wagoner was a failure to disclose evidence of bias or interest, and is a violation of Brady.

Petitioner raised this issue in his direct appeal presented before the Supreme Court. The Supreme Court found that there was no evidence that the State made any agreements, representations, or promises of leniency, or offered any other inducements, to Mr. Wagoner after he filed his motion for reduction of sentence. The Supreme Court found that Mr. Wagoner

13

appeared to have acted alone and on his own initiative in filing his motion. At trial, Petitioner had ample opportunity to cross-examine Mr. Wagoner regarding his plea agreement. The Supreme Court, therefore, found no error by the circuit court in refusing to set aside Petitioner's conviction on this point. Moreover, Mr. Wagoner's motion to reduce his sentence was *denied* by order entered on December 12, 2002.

Post-conviction habeas corpus proceedings provide Petitioner with the opportunity to raise any collateral issues which have not been fully and fairly litigated. Markley v. Coleman, 215 W.Va. 729, 601 S.E.2d 49 (2004). This issue has been previously and fully adjudicated in Petitioner's appeal of his motion for a new trial. The Supreme Court found nothing in these claims that affected the fairness of Petitioner's trial. West Virginia Code Section 53-4A-1(d) allows a petition for post-conviction habeas relief to advance contentions or grounds which have been previously adjudicated only if those contentions or grounds are based upon subsequent court decisions which impose new substantive or procedural standards in criminal proceedings that are intended to be applied retroactively. Waldron v. Scott, 222 W.Va. 122, 663 S.E.2d 576 (2008).

Petitioner is not alleging any new law or new procedures that should be applied to these issues, thus, these issues are deemed to be res judicata and are decided against the Petitioner.

**Issue 21 – Ineffective assistance of counsel**

Petitioner alleges several instances of ineffective assistance of counsel. Petitioner's trial counsel was A. Courtenay Craig, Esq. Petitioner alleges that the delay in Petitioner's trial and the many continuances filed are not attributable to the State's incomplete responses to discovery, but to trial counsel's dilatory conduct. Petitioner's focus is on the number of continuances and the lack of filed motions by counsel. Petitioner also complains of trial counsel's failure of

14

subpoena witnesses, in particular, Emil George (Ms. Dailey's father), as a witness for the defense at Petitioner's motion for a new trial.

Petitioner alleges trial counsel never requested a subpoena, never filed a motion for a continuance or requested a pre-trial evidentiary hearing to determine the admissibility of Ms. Dailey's testimony. Petitioner also alleges that trial counsel failed to subpoena or specifically ask in discovery for Detective Murphy's March 19, 2001, notes (presumably the alleged notes from the interview of Ms. Dailey). Petitioner then alleges that trial counsel failed to specifically ask in discovery for the interview notes from Mr. Wagoner's interviews. Petitioner also claims that trial counsel never asked Mr. Wagoner if he had provided a sworn statement to the State prior to trial.

Petitioner further alleges the following instances of ineffective assistance: failure of trial counsel to contact counsel for Mr. Wagoner to interview Mr. Wagoner prior to trial; failure of trial counsel to subpoena the Cabell County Jail locator to corroborate the testimony of Robert Johnson or Paul Murphy; failure of trial counsel to object to the introduction of the jury instructions; failure of trial counsel to file an alibi defense; and failure of trial counsel to investigate possible alibi defenses.

Petitioner then refers to the original pro se petition for further grounds of ineffective assistance. Those grounds concern ineffective assistance of appellate counsel, which was also Mr. Craig.

The threshold question in analyzing effectiveness of counsel assistance is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on has having produced a just result." Strickland v. Washington, 466 U.S. 668,

15

686 (1984). In Strickland, the United States Supreme Court held that the proper standard for attorney performance is that of reasonably effective assistance. Id.

Claims of ineffective assistance of counsel are to be governed by two-pronged test: (1) counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. State ex rel. Hatcher v. McBride, 221 W.Va. 760, 656 S.E.2d 789 (2007).

In reviewing counsel's performance when considering a claim of ineffective assistance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions; thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. Waldron v. Scott, 222 W.Va. 122, 663 S.E.2d 576 (2008).

Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused. State v. Thomas, 157 W.Va. 640, 203 S.E.2d 445 (1974).

To the extent that defense counsel failed to make certain motions on behalf of the Petitioner which would normally have been made by an attorney who was reasonably knowledgeable of criminal law, this court should conclude that these omissions were not prejudicial, would not have in any way influenced the outcome of the case, and should be regarded as harmless error. Id; State v. Cooper, 172 W.Va. 266, 304 S.E.2d 851 (1983).

16

Most of these alleged ineffective acts are not cited to any facts in the record. Petitioner does not state what pre-trial motions should have been filed or why. Petitioner's allegations center on the delay involved in getting to trial, the fact that an alibi defense was not explored and prepared, and that his funds for his bond were forfeited. The delay in trial is harmless error, as continuances are common for the parties to be prepared for trial. Whether or not an alibi defense was viable is a trial strategy, which this Court cannot replace its wisdom for that of the trial counsel. Last, the matter of Petitioner's bond is res judicata.

Petitioner's counsel was instrumental in the vacating of Petitioner's sentence and conviction for attempted aggravated robbery and eliminating a sentence of twenty years. Petitioner's counsel was quite effective in this instance. This issue is decided against the Petitioner.

### Issue 23 – Irregularities in arrest

Petitioner asserts that his <u>Miranda</u> rights were never read, and that Petitioner's trial counsel failed to pursue this issue in pre-trial motions, at trial, or during post-trial motions and appeals. With certain exceptions (most notably the right to assistance of counsel), it will be presumed, where the record is silent, that the court of competent jurisdiction performed its duty in all respects as required by law. <u>Scott v. Boles</u>, 150 W.Va. 453, 147 S.E.2d 486 (1966). This same presumption should be applied to law enforcement as well. This is the first time that Petitioner raises this issue, and there is no evidence supporting this allegation.

The response from the prosecuting attorney merely states that Petitioner has asserted this issue without addressing any specifics. Without any further support for this contention, this issue is decided against the Petitioner.

### Issue 26 – Illegal detention prior to arraignment

17

Petitioner asserts that he was arrested and charged with attempted robbery and aggravated robbery on March 17, 2001, but that he was held without bond until April 16, 2001. Court records from Cabell County Magistrate Court show affirmatively that Magistrate Jim J. Earls ordered the commitment of Petitioner to jail and set bond in the amount of $100,000 on the date of his arrest, March 17, 2001. Court records in this matter from both Magistrate Court and Circuit Court show affirmatively that Petitioner's initial appearance date was March 27, 2001, at which time bond was again set in the amount of $50,000 on each charge, for a total bond amount of $100,000.

Petitioner then filed a motion to reduce his bond on April 11, 2001, which motion was denied by order entered on April 12, 2001. Therefore, bond was set in this matter in a timely fashion. The investigation of the file by Petitioner probably failed to look further back than Petitioner's arraignment on the indictment, rather than looking at the magistrate court case of 01-F-254 and the bound-over cases of 01-B-261-262.

This issue is decided against the Petitioner.

**Issue 34 – Refusal to subpoena witnesses**

Petitioner asserts that his trial counsel never requested a subpoena, never filed a motion for a continuance or requested a pre-trial evidentiary hearing to determine the admissibility of Ms. Wagoner's testimony.

This issue really concerns the possibility of ineffective assistance of counsel, rather than the refusal on the part of the court or the clerk's office to refuse to subpoena witnesses. This issue is addressed as an argument under Issue 23—Ineffective assistance of counsel and is decided against the Petitioner.

**Issue 35 – Prejudicial joinder of defendants**

18

Petitioner refers to his argument in his original petition wherein he argues that the State's deliberate delay in sentencing Petitioner's co-defendant somehow denied Petitioner a fair trial. Petitioner's argument does not fit under an assignment of error concerning prejudicial joinder of defendants. There was no joinder of the defendants, Petitioner had a solo trial. The issue of the sentencing of the co-defendant has been addressed in detail in Issue 17—State's knowing use of perjured testimony and was found to be previously and fully adjudicated.

Therefore, this issue is res judicata and is found against the Petitioner.

### Issue 37—Non-disclosure of grand jury minutes

Petitioner asserts that his trial counsel failed to move for disclosure of grand jury minutes and testimony for impeachment purposes. This issue really concerns the possibility of ineffective assistance of counsel, rather than any act on the part of the court, the clerk, or the prosecuting attorney in failing to disclose grand jury minutes. This issue is addressed as an argument under Issue 23—Ineffective assistance of counsel and is found against the Petitioner.

### Issue 38 – Refusal to turn over witness notes after witness has testified

Petitioner asserts that the prosecuting attorney failed to properly answer discovery motions filed by the Petitioner and failed to produce all notes and statements concerning the co-defendant's testimony after he testified. Petitioner refers to his arguments in his original petition concerning ineffective assistance of counsel. The State's response alleges that this issue concerns a matter of ineffective assistance of counsel. This issue is addressed as an argument under Issue 23—Ineffective assistance of counsel and is found against the Petitioner.

### Issue 43 – Claims of prejudicial statements by trial judges

Petitioner claims that on September 9, 2002, Judge Ferguson (who was sitting in for Judge O'Hanlon) made the following statement, "I want to wait and see what happens with Mr.

19

Cooper because I am hoping that the Court will do the right thing and give him a lengthy sentence due to his prior felony convictions of violence." Petitioner then refers to his argument in his original petition concerning the dismissal of prospective juror Debra Cassidy.

The State's response to this issue is that Judge Ferguson was not the trial judge in this matter. Second, the State asserts there is no evidence that the trial judge had any knowledge of the statement, or even if he did, would have been influenced by Judge Ferguson's personal opinion of the matter. There is no evidence that this statement was made in front of Judge O'Hanlon or in front of the jury.

Since the statement was not made by the trial judge, and Petitioner does not assert any specific prejudice or harm to him by this statement in relation to his sentencing by the trial judge (and not Judge Ferguson), this issue is decided against the Petitioner.

Petitioner's argument with regard to the dismissal of prospective juror Debra Cassidy is also decided against the Petitioner. In the transcript of the jury voir dire included by the Petitioner in his original petition, the Court informs Ms. Cassidy that "I think you don't even need to sit down. Thank you for being here. Appreciate that. Tell Magistrate Rice we said hello and thank him for sending you up."

Based on these statements by the Court, it is clear that Ms. Cassidy was an employee of Magistrate Rice and a working member of the magistrate court system. Although not explicit in its statement to Ms. Cassidy, the Court was clearly dismissing Ms. Cassidy "for cause" as an employee of the court system.

These issues are decided against the Petitioner.

**Issue 50 – Severer sentence than expected**
**Issue 51 – Excessive Sentence**
**Issue 53 – Amount of time served on sentence, credit for time served**

Petitioner asserts in these assignments of error that his sentence was in violation of the proportionality clause since he received a much longer sentence than his co-defendant. Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: "Penalties shall be proportioned to the character and degree of the offence." Syl. Pt. 8, State v. Vance, 164 W.Va. 216, 262 S.E.2d 423 (1980).

Punishment may be constitutionally permissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating Article III, Section 5 of the West Virginia Constitution.

Robbery by violence is punished by a minimum determinate ten-year sentence, but a trial court has broad discretion to impose any determinate sentence from ten years to life. W.Va. Code § 61-2-12; State ex rel. Faircloth v. Catlett, 165 W.Va. 179, 267 S.E.2d 736 (1980). In State v. Houston, the Supreme Court set out guidelines for the factual record needed to support imposition of a robbery sentence as follows:

> The sentencing record should include the presentence report and any other diagnostic reports used as an aid in imposing the sentence. The court shall also permit statements relevant to the sentence to be made on the record by the defendant, his attorney, and the prosecuting attorney, if the statements have not already been recorded at or prior to the time sentence was initially imposed . . . . Finally, the sentencing judge shall state on the record his reasons for selecting the particular sentence . . . .

166 W.Va. 202, 273 S.E.2d 375 (1980).

The Supreme Court recognized in Smoot v. McKenzie that disparate sentences of co-defendants that are similarly situated may be considered in evaluating whether a sentence is so

21

grossly disproportionate to an offense that it violates our constitution. Disparate sentences for co-defendants are not per se unconstitutional. State v. Cooper, 172 W.Va. 266, 304 S.E.2d 851 (1983). Courts consider many factors such as co-defendants' respective involvement in the criminal transaction (who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and lack of remorse. Id., see cases cited therein.

There are two tests to determine whether a sentence is so disproportionate to a crime that it violates the West Virginia Constitution. The first is subjective and asks whether the sentence for a particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test the Supreme Court spelled out in Syllabus Point 5 of Wanstreet v. Bordenkircher:

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

166 W.Va. 523, 276 S.E.2d 205 (1981). The Supreme Court has had occasion to review Petitioner's sentence during his direct appeal of his motion for a new trial. No ruling was made on the disproportional nature of Petitioner's sentence, thus, a conclusion can be drawn that Petitioner's sentence is not so offensive to our system of justice that it cannot pass a societal and judicial sense of justice. Therefore, the analysis moves to the more objective test.

Petitioner's co-defendant, Mr. Wagoner, received a sentence of ten years for first-degree robbery. Mr. Wagoner's motion for reduction of sentence was denied. Mr. Wagoner was committed to the penitentiary on November 16, 2002 and served until July 12, 2005, at which

22

time he was granted parole. Mr. Wagoner was discharged from parole on August 30, 2006. Mr. Wagoner's criminal history prior to March, 2001, involved a handful of arrests for moving vehicle violations (such as reckless driving and driving without a license or insurance). He was also arrested for possession of marijuana in 2000, and had several arrests related to domestic violence involving his now-ex-wife, Anne Marie Dailey. After his arrest in March, 2001, Mr. Wagoner was released on bond. During that time he remarried, moved to Atlanta, Georgia, and started his own successful construction company which, by August 2002, had one employee in addition to Mr. Wagoner.

In contrast, Petitioner received a sentence of forty years for first-degree robbery. Petitioner's criminal history contains a long list of arrests and convictions beginning in 1985 when he was 19. His offenses include transferring stolen property; armed robbery; robbery and felony assault; and, in 1989, he was convicted of aggravated robbery and sentenced to twenty years confinement. Petitioner was paroled in 1994, and his parole was revoked in 1995. Petitioner was again paroled in May, 1997, and his parole was again revoked in September, 1997. Petitioner was again paroled in January, 2000, until it was revoked in November, 2000. Petitioner was finally discharged from his sentence on February 14, 2001, a month before his arrest on the robbery charges from this indictment. Furthermore, while on bond for these charges, Petitioner was arrested on August 7, 2001, for possession of crack cocaine, and again on May 6, 2002, for possession of a controlled substance.

These vastly differing histories support the imposition of a different and more severe sentence for Petitioner. Petitioner's sentence has already been reviewed by the Supreme Court when Petitioner appealed the order in arrest of judgment. The Supreme Court declined to hear any arguments with regard to Petitioner's sentence for Count II for first degree robbery.

23

This issue is decided against the Petitioner.

**THEREFORE**, as all issues have been decided against Petitioner, it is accordingly **ADJUDGED, ORDERED** and **DECREED**, that the Petitioner is entitled to no relief, and it is therefore Ordered that the writ heretofore issued is discharged and held for naught, and that the Petition herein be dismissed with prejudice from the docket of this Court. This is a final order.

The clerk is directed to send a copy of this order as follows:

Jon Hoover, Esq.
3 Cedarwood Lane
P.O. Box 249
Barboursville, WV 25504-0249

James Aaron Cooper, III
Inmate #31356-2
Huttonsville Correctional Center
P.O. Box 1
Huttonsville, WV 26273

Doug Reynolds, Esq.
Office of the Prosecuting Attorney
Cabell County Courthouse
750 Fifth Avenue
Huntington, WV 25701

Enter this Order this 27th day of September, 2010.

_____
Chief Judge Dan O'Hanlon
Sixth Judicial Circuit

STATE OF WEST VIRGINIA
COUNTY OF CABELL
I, ABELL CHANDLER, CLERK OF THE CIRCUIT
COURT FOR THE COUNTY AND STATE AFORESAID
DO HEREBY CERTIFY THAT THE FOREGOING IS ENTERED Circuit Court Civil Order Book
A TRUE COPY FROM THE RECORDS OF SAID COURT
ENTERED ON _____9/28/10_____ No. 231 Page 525 this
GIVEN UNDER MY HAND AND SEAL OF SAID COURT SEP 2 8 2010
THIS———
NOV 2 3 2010
_____ CLERK
CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

24