619 S.E.2d 126

**STATE of West Virginia, Plaintiff
Below, Appellee,**

v.

**James Aaron COOPER, II, Defendant
Below, Appellant.**

No. 31766.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 18, 2005.

Decided June 17, 2005.

**614**

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Assistant Attorney General, Charleston, for Appellee.

A. Courtenay Craig, Esq., Underwood Law Offices, Huntington, for Appellant.

PER CURIAM.

In this appeal from the Circuit Court of Cabell County, the appellant was convicted after a jury trial of two counts of aiding and abetting armed robbery. The appellant challenges a circuit court order denying him a new trial.

After careful review of the trial transcript, the briefs and arguments of the parties, and all other matters of record, we affirm the circuit court's order.

## I.

At about 11:45 p.m. on March 16, 2001, Daniel Wagoner drove to Huntington to purchase crack cocaine for his own personal consumption. Mr. Wagoner was flagged down by the appellant and defendant below, James Aaron Cooper. Mr. Wagoner knew that the appellant sold crack, and had purchased crack from the appellant ten to twenty times between the middle of February 2001, and the middle of March 2001.

The appellant climbed into the passenger seat of Mr. Wagoner's truck, and for the next two hours they drove around Huntington smoking crack. Mr. Wagoner falsely represented that he had money to purchase the crack, and the appellant provided Mr. Wagoner with four rocks, each priced at $50.00.

At approximately 2:00 a.m. on March 17th, Mr. Wagoner stated to the appellant that he intended to go home. The appellant demanded Mr. Wagoner pay him $200.00 for the drugs they had smoked together, and became irate and physically threatening. The appellant insisted he needed the money to buy more cocaine for sale to other customers, and would not let Mr. Wagoner leave until he paid. Because Mr. Wagoner could not pay, the appellant decided to recover his money by forcing Mr. Wagoner to commit several robberies.

At approximately 2:28 a.m., at the appellant's direction, Mr. Wagoner parked his truck in an alleyway behind a convenience store and, leaving the appellant sitting in the passenger's seat, entered the store and demanded money. A store employee hit the panic button, and Mr. Wagoner put his left hand under his coat in a threatening manner. The store employee told Mr. Wagoner that he could not open the register unless Mr. Wagoner made a purchase. Mr. Wagoner ran from the store back to his truck. A witness saw Mr. Wagoner's truck parked be-hind the store, and heard the truck leave quickly, squealing its tires. The witness was able to describe Mr. Wagoner's brown jacket.

The appellant also chose the next store, a Big Bear grocery store several blocks away, and directed Mr. Wagoner to take a weapon with him into the store. Mr. Wagoner retrieved a box cutter from his truck's toolbox, and at about 2:35 a.m. entered the store and asked a cashier if he had change for a dollar. When the cashier opened his register, Mr. Wagoner brandished the box cutter and demanded the contents of the cash drawer. The cashier later testified that he emptied cash and food stamps from his drawer into a plastic grocery bag, and Mr. Wagoner fled the store.

While Mr. Wagoner was inside the store, the appellant moved into the driver's seat of the truck. Mr. Wagoner entered the passenger seat, and the appellant drove to a nearby house to purchase another rock of crack cocaine. A few minutes later, a police officer—armed with a description of the truck involved in both robberies—stopped the truck. The appellant was removed from the driver's seat. Mr. Wagoner was removed from the passenger's seat, and taken to both crime scenes where he was identified by both victims. A search of the truck found a brown jacket similar to the one identified by witnesses with a box cutter in its pocket. A wad of money, between $80.00 and $90.00, was found underneath the truck's armrest, and a rock of crack cocaine was beneath the driver's seat. A Big Bear plastic grocery bag was found in the truck's toolbox containing $35.00 in cash and $13.00 in food stamps.

Mr. Wagoner was arrested, and later plead guilty to an information charging him with one count of first-degree robbery. He was sentenced to a term of ten years in the penitentiary. However, after testifying against the appellant, upon motion of his attorney and without objection from the prosecuting attorney, a circuit judge released Mr. Wagoner on probation for the balance of his term.[1]

---

**1.** Mr. Wagoner's criminal history prior to March 2001 involved a handful of arrests for moving vehicle violations (such as reckless driving and driving without a license or insurance). He was also arrested for possession of marijuana in 2000, and had several arrests related to domestic

The appellant was also arrested, and was subsequently indicted with two counts of aiding and abetting a robbery in violation of *W.Va.Code*, 61–2–12(a)(2) [2000].[2] After a two-day jury trial in September 2002, the appellant was found guilty on both counts of the indictment. The circuit court sentenced the appellant to twenty years on Count I and forty years on Count II, and ordered that both sentences are to run consecutively.[3] In an order dated March 18, 2003, the circuit court denied the appellant's motion for a new trial.

The appellant now appeals the circuit court's March 18, 2003 order.

## II.

■ A trial court's order denying a defendant's motion for a new trial is entitled to substantial deference on appeal. The trial court's findings of fact supporting this decision may be reversed only when the defendant proves that they are clearly wrong. As we stated in Syllabus Point 3 of *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000):

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

violence involving his now-ex-wife, Anne Marie Dailey. After his arrest in March 2001, Mr. Wagoner was released on bond. During that time he remarried, moved to Atlanta, Georgia, and started his own successful construction company which, by August 2002, had one employee in addition to Mr. Wagoner.

2. *W.Va.Code*, 61–2–12(a)(2) [2000] states:

(a) Any person who commits or attempts to commit robbery by: . . .
(2) us[ing] the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years.

*See also, State v. Crouch,* 191 W.Va. 272, 275, 445 S.E.2d 213, 216 (1994) ("The question of whether a new trial should be granted is within the discretion of the trial court and is reviewable only in the case of abuse.").

## III.

■ The appellant raises four points of error on appeal. First, he alleges that the prosecuting attorney improperly withheld the address of a potential witness who might have provided exculpatory evidence on behalf of the appellant. Second, he alleges that the prosecuting attorney wrongfully concealed information about Mr. Wagoner's guilty plea and sentence from both the appellant and the jury. Third, the appellant asserts that it was improper for a circuit judge—upon learning that the appellant had been arrested for possession of crack cocaine while released on bond—to revoke his bond without either the appellant and/or his counsel being present. Finally, the appellant asserts that evidence presented at a hearing on a motion for a new trial was sufficient to establish that the appellant was denied a fair trial, but that the trial court improperly disregarded that evidence.

The first issue raised by the appellant concerns the address and statements of Anne Marie Dailey, co-defendant Daniel Wagoner's ex-wife. Ms. Dailey was not called as a witness during the appellant's trial. Instead, she testified at a post-trial hearing that she stated to a police officer on March 19, 2001— two days after the robberies—that Mr. Wagoner told her that he did not commit the robberies. Ms. Dailey further testified that

3. The appellant's criminal history contains a long list of arrests and convictions beginning in 1985 when he was 19. His offenses included transferring stolen property; armed robbery; robbery and felony assault; and in 1989, he was convicted of aggravated robbery and sentenced to twenty years confinement. The appellant was paroled in 1994; revoked in 1995; paroled again in May 1997 until it was revoked in September 1997; paroled from January 2000 until it was revoked in November 2000; and finally discharged from his sentence on February 14, 2001, a month before his arrest on the present offenses.

While on bond, the appellant was arrested on August 7, 2001, for possession of crack cocaine, and again on May 6, 2002, for possession of a controlled substance.

in January 2002, she spoke to the same police officer but gave a different statement, to the effect that Mr. Wagoner had admitted to committing the robberies alone, and after the fact had "picked [appellant] Jimmy Cooper up, and Jimmy said, 'You look buzzed, let me drive the vehicle.' "[4] Ms. Dailey testified that both statements were recorded by the police officer in writing. Ms. Dailey also claimed that she had spoken with the prosecuting attorney's office regarding her conversations with Mr. Wagoner, and had given the prosecuting attorney her address on the expectation she would be subpoenaed.

The appellant argues that the prosecuting attorney failed to turn over the address of Ms. Dailey, and failed to provide notes or written copies of the exculpatory statements made by her, and thereby deprived the appellant of a fair trial as guaranteed by the due process clause of the *United States* and *West Virginia Constitutions. See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."); Syllabus Point 4, *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982) ("A prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution.").

■ The State concedes that under the *Brady* rule the prosecuting attorney had a duty to produce evidence favorable to the appellant. However, the State argues that it did not have Ms. Dailey's address—Ms. Dailey herself testified that she moved repeatedly prior to the appellant's trial and believed it likely that she did not provide the State with her new addresses—and the State suggests that the appellant had the same information as the State regarding Ms. Dailey. The State contends that the appellant, through no fault of the State, was simply unsuccessful in his attempts to contact Ms. Dailey.

For instance, the appellant argues that his investigator could not locate the witness before trial because she had moved to Ohio and changed her name from Wagoner to Dailey. The State, however, points out that more than three months before trial, the appellant indicated an intent to use•at trial a domestic violence protective order which was filed against Mr. Wagoner by his former wife, identified in the order as "Ann Marie Daily," and which lists her home address in Albany, Ohio. Furthermore, the record indicates that the appellant's investigator contacted Ms. Dailey's grandparents in Huntington, who referred him to Ms. Dailey's mother in Ohio. The investigator spoke by telephone with Ms. Dailey's mother on two occasions, and requested that she relay his message and telephone number to Ms. Dailey. Ms. Dailey chose not to return the telephone calls.

The State argues that *Brady* is not violated when the defendant is aware of the essential facts that would enable him to take advantage of the exculpatory evidence. *See United States v. Wilson,* 901 F.2d 378, 380 (4th Cir.1990). The State argues that the appellant had available numerous avenues by which to contact Ms. Dailey, the same avenues that were available to the State, but simply did not or could not pursue them to fruition. We agree, and find no error that prejudiced the appellant's right to a fair trial. The appellant had information sufficient to locate Ms. Dailey, but her reluctance to speak with the appellant cannot in this case be imputed to the State.

As for the alleged statements given by Ms. Dailey, the police officer testified that no such written statements were taken. The officer did recall speaking with Ms. Dailey on several occasions, but also recalled that her statements always implicated the appellant in the crime. The State argues that the first time it learned that Ms. Dailey intended to offer testimony exculpatory to the appellant was on August 26, 2002, approximately one week before trial. The record indicates that

---

**4.** Ms. Dailey was, however, wary about Mr. Wagoner's story, going on to say: "But I also told [the officer] that I was lied to constantly by Daniel Wagoner. So, I don't really know what to believe."

the prosecuting attorney spoke with Ms. Dailey by phone, learned of the potentially exculpatory evidence, and that the prosecuting attorney then informed the appellant's counsel of this information. On August 28, 2002, appellant's counsel wrote to the prosecuting attorney and confirmed this conversation saying:

> I am writing you to confirm various facts we related in our conversations .... You have been unable to find and or subpoena Anne Wagoner, but you have spoken with her directly. She now resides in the state of Ohio. When you spoke to her, she admitted Daniel [Wagoner] made conflicting statements about [appellant] James [Cooper's] involvement in the armed robberies. Once saying James was not involved, another saying he was....

> On my part, I related [that the appellant's wife] Rebecca Cooper spoke to Anne Wagoner and claims Anne stated Daniel eventually told the truth and James was not involved. I may attempt to call Rebecca as a witness, but I will not ask about the call without prior notice at trial.

The circuit court considered Ms. Dailey's testimony regarding her statements to the police officer, and found her testimony that the statements were contemporaneously recorded to be contradictory and not entirely credible. Conversely, the circuit court found credible the testimony of the police officer who stated that he had made no recordings of her various statements, and that in most of Ms. Dailey's statements she indicated that the appellant was guilty. · In sum, the circuit court found that the first notice to the State that Ms. Dailey intended to give evidence exculpatory to the appellant was on August 26, 2002, and that the State immediately notified the appellant's counsel.

■■■ "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286, 302 (1999). In the instant case, the

circuit court found nothing persuasive to show that Ms. Dailey gave the State evidence that was favorable to the appellant because it was exculpatory, or because it was impeaching, prior to August 26, 2002, and we cannot say on the existing record that the circuit court's finding was clearly wrong. Furthermore, the appellant failed to show that Ms. Dailey's statements favorable to the appellant were suppressed by the State. The circuit court explicitly found that the State provided the content of Ms. Dailey's statements to the appellant prior to trial, and we see nothing in the record demonstrating that the appellant was prevented from putting this evidence to effective use at trial. "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process simply because it did not produce the evidence sooner. There is no *Brady* violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial." *In re United States,* 267 F.3d 132, 144 (2d Cir.2001). After a careful review of the record, we find no error by the circuit court in refusing to set aside the appellant's conviction on this point. ·

■■■ The appellant's second argument is that he was denied a fair trial because the prosecuting attorney failed to reveal details surrounding Mr. Wagoner's guilty plea and sentence. It appears from the record that Mr. Wagoner entered into an agreement with the prosecuting attorney to plead guilty to an information charging him with first-degree robbery on October 2, 2001. As a condition of the plea, the prosecuting attorney agreed to drop a possession charge, and not to object to the minimum sentence. In return, Mr. Wagoner agreed to cooperate with the State in the appellant's case. On March 29, 2002, a circuit judge sentenced Mr. Wagoner to ten years in the penitentiary. All of these details of the plea agreement and sentence were known to the appellant before his trial.

On August 5, 2002, Mr. Wagoner's defense counsel filed with the circuit clerk a motion to reduce Mr. Wagoner's sentence, asking that the circuit court reduce the sentence to a term of probation. The filing date was

stamped on the motion and noted in the docket. The appellant, however, contends that this motion was never placed in Mr. Wagoner's criminal file in the circuit clerk's office. The appellant asserts an examination was made of the file before trial (although there is no record of exactly when) and the motion was not found. In sum, the motion was not available for appellant's counsel to employ in the impeachment of Mr. Wagoner at the appellant's trial on September 4–5, 2002.

As best we can understand the appellant's argument, he contends that his right to a fair trial was impaired because the prosecuting attorney did not inform the appellant's counsel that Mr. Wagoner's motion for reduction of sentence had been filed. Essentially, the appellant contends that the mere existence of the motion was exculpatory evidence of Mr. Wagoner's motive or bias.

■■■■ The State agrees that impeachment evidence used to show a witness's bias or interest falls within the production requirements of the *Brady* rule. Specifically, "[t]he prosecution must disclose any and all inducements given to its witnesses in exchange for their testimony at the defendant's trial." Syllabus Point 2, *State v. James,* 186 W.Va. 173, 411 S.E.2d 692 (1991). The State argues, though, that the issue raised by the appellant involves a request for leniency made by a witness, and not an offer of leniency by the prosecution. In other words, the State argues that *Brady* only requires the production of evidence of inducements given by the prosecuting attorney to witnesses; it does not require the production of evidence regarding the wishes, hopes and expectations of a proposed witness. We agree.

■■■■ The rule ensconced in *Brady* and in *State v. James*

states that there must be a full disclosure of any agreements entered into between the prosecutor and the witness which may motivate the witness to testify and which may affect the outcome of the trial. The rule does not address nor require the dis-

closure of all factors which may motivate a witness to cooperate. The simple belief by a defense attorney that his client may be in a better position to negotiate a reduced penalty should he testify against a codefendant is not an agreement within the purview of [the rule].

*Alderman v. Zant,* 22 F.3d 1541, 1554–55 (11th Cir.1994).

In the instant case, we find no evidence that the State made any agreements, representations or promises of leniency, or offered any other inducements, to Mr. Wagoner after he filed his motion for reduction of sentence. Mr. Wagoner appears to have acted alone and on his own initiative in filing his motion.[5] At trial, the appellant had ample opportunity to cross-examine Mr. Wagoner regarding his plea agreement, an agreement that required Mr. Wagoner to cooperate in the prosecution of the appellant. We therefore find no error by the circuit court in refusing to set aside the appellant's conviction on this second point.

■■■■ The third point of error raised by the appellant concerns the revocation of his pre-trial bond. The appellant was arrested in March 2001 and later released on bond. He was arrested on August 7, 2001, for possession of crack cocaine, and by orders dated August 23, 2001, the appellant's bond was revoked and his cash contribution to that bond was also forfeited. The appellant argues that the orders were entered despite the fact that neither the appellant nor his attorney were notified or present at the hearing.

The appellant did not directly or timely challenge the circuit court's orders. Instead, the appellant waited until his post-trial hearing on his motion for a new trial to initiate a challenge. Upon objection by the prosecuting attorney, the circuit court declined to take evidence or hear argument on the bond issue.

After carefully reviewing the record, we see nothing to indicate that the revocation of

---

5. Counsel for the appellant had an opportunity to question counsel for Mr. Wagoner in a post-trial hearing. We see nothing in the record to suggest anything other than that the motion for a reduc-

tion of sentence was a routine motion filed pursuant to Rule 35(b) of the *Rules of Criminal Procedure.*

the appellant's bond and forfeiture of the appellant's cash contribution had anything to do with the fairness of the appellant's trial. We therefore find no abuse of discretion by the circuit court in declining to review the appellant's arguments regarding the bond in the context of the motion for a new trial.

The fourth and final issue raised by the appellant concerns the circuit court's finding that the appellant had not met his burden in showing an entitlement to a new trial. Rule 33 of the *Rules of Criminal Procedure* states, in part, that a "court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." "The question of whether a new trial should be granted is within the discretion of the trial court and is reviewable only in the case of abuse." *State v. Crouch,* 191 W.Va. 272, 275, 445 S.E.2d 213, 216 (1994).

After reviewing the testimony, evidence and argument presented to the circuit court, we cannot say that the circuit court abused its discretion in denying the appellant's motion for a new trial.

### IV.

We find no error or abuse of discretion warranting setting aside the circuit court's March 18, 2003 order. The order must therefore be affirmed.

Affirmed.