# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-0563** (Wood County 18-F-19)

**Bryson J. England Jr.,**
**Defendant Below, Petitioner**

**FILED**

**July 30, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Bryson J. England Jr., by counsel Courtney L. Ahlborn, appeals the Circuit Court of Wood County's May 13, 2019, order sentencing him to consecutive terms of incarceration of not less than one nor more than fifteen years for each of his three delivery of a controlled substance convictions following a jury trial. Respondent State of West Virginia, by counsel Holly M. Flanigan, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Agent J.R. Castro, an agent with the Parkersburg Narcotics Task Force ("Task Force"), completed an Application for Electronic Interception Order ("EIO"), seeking an EIO for twenty days from its issuance. On the application, Agent Castro noted that petitioner committed the felony offense of delivery of a controlled substance on August 5, 2017. The application was taken and sworn before the magistrate on August 7, 2017. In further support of the application, Agent Castro submitted an affidavit. The affidavit included an apparently incorrect date, stating, "On the 18th day of April, 2017 came Agent J.R. Castro . . . hereafter referred to as your affiant." Agent Castro detailed that, in the prior forty-eight hours, he met with a confidential informant ("CI") who advised Agent Castro that petitioner was distributing controlled substances, and the agent detailed that a controlled buy of heroin had been made from petitioner. The EIO was issued on August 7, 2017. After its issuance, the CI made two additional controlled purchases of heroin from petitioner: one on August 7, 2017, and one the following day, August 8, 2017.

On January 12, 2018, the grand jury returned a twelve-count indictment against petitioner; however, various counts were dismissed before trial, and petitioner was tried on only

1

three counts of delivery of a controlled substance, which corresponded to the three controlled buys of heroin made by the CI.[1]

Petitioner's three-day jury trial began on October 23, 2018. Before empaneling the jury, the circuit court heard petitioner's motion to disqualify the trial judge, which was filed on October 5, 2018.[2] Although the court noted that the motion was untimely under Rule 17.01 of the West Virginia Trial Court Rules, the court nevertheless considered it. The basis of the motion was that the trial judge issued a search warrant against petitioner in an unrelated case involving the death of another. Petitioner argued that the information that the court had regarding that other matter "would prevent [petitioner] from getting a fair and unbiased hearing, and that that information that the [c]ourt has could potentially impact the rulings in this trial." The court denied the motion, finding that "[i]t's very common for a trial court judge to handle numerous cases against the same defendant, even cases where the defendant had been previously convicted before that same court and then comes before the court on another case."

Petitioner also argued pretrial that the State had failed to disclose *Brady* material[3] concerning the CI, including that the CI had recently been arrested on a federal charge and that certain charges were dismissed against the CI in exchange for her service against petitioner. The State responded that the CI "volunteered to buy controlled substances from" petitioner without any agreement to dismiss charges. The CI was offered fifty dollars per controlled drug buy, and that fact had been disclosed to petitioner. The court determined that "there do[] not appear to be any Brady violations being brought to the attention of the [c]ourt."

---

[1] The State elected not to proceed on one count involving another CI, whose identity the State did not want to disclose due to that CI's participation in ongoing investigations. The circuit court also granted a motion to suppress evidence seized during a search of petitioner's residence, which precluded trial on the counts related to that evidence.

[2] West Virginia Trial Court Rule 17.01(a) permits a party to file a motion for disqualification of a judge "within thirty (30) days after discovering the ground for disqualification." A motion to disqualify must "be filed with the circuit clerk at least seven (7) days in advance of any date set for a non-trial proceeding in the case or at least twenty-one (21) days in advance of any trial date set in the case." *Id.* When a motion is filed less than twenty-one days prior to trial, as was done in this case, "the judge may either grant or deny the disqualification motion," and, if denied, "allow the moving party to make a record on the disqualification issue and . . . the judge is not required to transmit the motion or record on the disqualification issue to the Chief Justice, but the issue may be addressed on appeal." *Id.* at W. Va. Trial Ct. R. 17.01(e).

[3] This material is named for the United States Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.

After pretrial motions were ruled upon by the court, the circuit court proceeded with jury selection. One prospective juror, Jeffrey Edwards, asked to speak to the court in private. When, outside the presence of the other jurors, the court asked Mr. Edwards if "there [is] something we should know about your ability to serve on the case," Mr. Edwards explained that he was "losing a lot of money by being here. When it involves a drug case, it's just been kind of going through my head here whether I can, you know, just . . . I apologize." Mr. Edwards elaborated that his place of employment was short-staffed, and he was "a little touchy with a case that involves [drugs]." Mr. Edwards further expressed that he did not "want to be thinking about [being a burden to other coworkers by missing work] while I'm trying to, you know, be fair to the [d]efendant" and acknowledged that these thoughts "may have some impact on my, you know, decision making." The court did not "hear any reason to disqualify him for cause"—finding only that Mr. Edwards expressed that "he's being inconvenienced, like every other juror"—but Mr. Edwards was removed by a peremptory strike.

During trial, Agent Castro was examined and cross-examined about his arrangement with the CI and the benefits she received as a result of their arrangement.[4] Agent Castro detailed that he met the CI in 2013 or 2014 after stopping her vehicle for traffic violations, and the two eventually entered into a working relationship. The CI approached Agent Castro and informed him that she could purchase controlled substances from petitioner. Agent Castro agreed to work with her toward that end, and he testified that the CI was paid $50 per controlled drug buy.

Agent Castro also testified that, for the CI's services in an investigation unrelated to petitioner, certain charges filed against her by another officer were dismissed, and three citations were dismissed "before these events where she agreed to provide information" to Agent Castro. Just as the parties did during Agent Castro's testimony, they questioned the CI regarding her relationship with Agent Castro and the benefits she received for her cooperation with the Task Force. They also questioned the CI regarding her federal drug charge.

Tiffany Neu, a forensic scientist with the West Virginia State Police Forensic Laboratory ("Crime Lab"), testified that she analyzed the substances in State's Exhibits 6 and 7, which were determined to be heroin. The substance in State's Exhibit 8 was not analyzed by the Crime Lab. Ms. Neu testified that it was visually consistent with State's Exhibits 6 and 7, but she acknowledged that without a preliminary and confirmatory test, she could not definitively state that the substance in State's Exhibit 8 was heroin.

Following Ms. Neu's testimony, petitioner moved for a judgment of acquittal as to Count 7, which was the charge premised on the delivery of the substance contained within State's Exhibit 8. Petitioner argued that because Ms. Neu could not identify the substance as heroin, that count should not be submitted to the jury. The court denied the motion, noting that Agent Castro testified that the substance appeared to be heroin, that the CI opined that it was heroin, and that

---

[4] Various witnesses testified on each party's behalf; however, only that testimony relevant to petitioner's assignments of error on appeal is recounted here.

3

Ns. Neu testified that the substance was consistent with State's Exhibits 6 and 7, which were confirmed to be heroin.

Ultimately, petitioner was found guilty of each of the three delivery of a controlled substance charges submitted to the jury, and, on May 13, 2019, the court sentenced petitioner to consecutive terms of not less than one nor more than fifteen years of incarceration for each conviction. This appeal followed.

Petitioner raises six assignments of error on appeal. In his first assignment of error, he argues that the circuit court should have granted his motion to disqualify. Without citation to supporting law or legal analysis, petitioner offers the bare assertion that the trial judge's issuance of a search warrant in a separate matter involving petitioner meant that the trial judge had information of a "serious nature" against petitioner, which precluded the judge from being able to impartially preside over his case and "could potentially impact the rulings in this trial."

"[T]he matter of judicial recusal and disqualification is a matter of discretion reposed solely in the presiding judge and the Chief Justice of this Court." *State v. Berry*, 227 W. Va. 221, 224, 707 S.E.2d 831, 834 (2011) (citation and internal quotations omitted).[5] Petitioner provides nothing more than the unsubstantiated claim that a court's issuance of a search warrant against a defendant in a separate matter serves to justify disqualification from any other pending matters. Such unsupported statements—"skeletal 'argument[s],' really nothing more than an assertion"— do not preserve claims for appellate review. *State, Dep't of Health and Human Res. ex rel. Robert Michael B. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (citation omitted). Accordingly, petitioner has failed to demonstrate that the circuit court abused its discretion in denying his disqualification motion.

In petitioner's second assignment of error, he argues that the State withheld information regarding the CI's criminal history and federal indictment that would have tended to exculpate him. Specifically, petitioner alleges that the State withheld the scope of the CI's involvement with the Task Force, including the promises and agreements made with the CI in exchange for her assistance, and the fact that the CI was facing federal drug charges at the time of petitioner's trial.

This Court incorporated the United States Supreme Court's holding in *Brady* concerning the disclosure of favorable evidence when requested, as well as the Supreme Court's subsequent expansion of that holding to favorable evidence that has not been requested, *see United States v. Agurs*, 427 U.S. 97 (1976), into Syllabus Point 4 of *State v. Hatfield*, 169 W. Va. 191, 286 S.E.2d 402 (1982): "A prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution." In *State v. Youngblood*, 221 W.

---

[5] As explained above, petitioner's motion to disqualify was filed less than twenty-one days prior to trial. As a result, the trial judge was permitted to deny the disqualification motion without transmitting it to this Court for resolution. *See* W. Va. Trial Ct. R. 17.01.

4

Va. 20, 650 S.E.2d 119 (2007), we set forth the three components of a constitutional due process violation under *Brady* and *Hatfield*: "(1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, *i.e.*, it must have prejudiced the defense at trial." *Youngblood*, 221 W. Va. at 29, 650 S.E.2d at 128. Finally, when reviewing a claimed violation of *Brady* and *Hatfield*, "mixed questions of law and fact [are presented]. Consequently, the 'circuit court's factual findings should be reviewed under a clearly erroneous standard and . . . questions of law are subject to *de novo* review.'" *Youngblood*, 221 W. Va. at 26, 650 S.E.2d at 125 (citation omitted).

In *State v. Cooper*, 217 W. Va. 613, 619 S.E.2d 126 (2005), we stated that

[a]s long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process simply because it did not produce the evidence sooner. There is no *Brady* violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial.

*Cooper*, 217 W. Va. at 618, 619 S.E.2d at 131 (citation omitted). Here, petitioner had the information that he claimed was not disclosed prior to trial, and he cross-examined Agent Castro and the CI on that information. As we found in *Cooper*, here, too, "we see nothing in the record demonstrating that the [petitioner] was prevented from putting this evidence to effective use at trial." *Id.* Accordingly, petitioner has demonstrated no *Brady* violation, and this assignment of error lacks merit.

Next, petitioner claims that the EIO was issued in violation of his constitutional rights, and that the recordings of the controlled buys obtained pursuant to that EIO should have been suppressed. Agent Castro dated his affidavit in support of electronic interception "April 18, 2017," but the affidavit was sworn before and issued by the magistrate on August 7, 2017. Petitioner argues that the April 18, 2017, date renders stale Agent Castro's assertion, "Your affiant states within the past [forty-eight] hours he met with a cooperating individual." Additionally, although Agent Castro stated that the CI made a controlled drug buy from petitioner, petitioner claims that the affidavit includes no information demonstrating the basis of the CI's knowledge. *See State v. Thompson*, 178 W. Va. 254, 257, 358 S.E.2d 815, 818 (1987) ("[I]nformation presented to a magistrate must still establish probable cause on the face of the warrant or by other sworn testimony that attests to the 'veracity' and basis of knowledge of the person supplying the information.") (citation omitted).

We employ a "two-tier" standard of review to a circuit court's ruling on a motion to suppress. *State v. Lilly*, 194 W. Va. 595, 600, 461 S.E.2d 101, 106 (1995). First, we "review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action." *Id.* We also "consider the evidence in the light most favorable to the prosecution" when reviewing the denial of a motion to suppress. *Id.* And we have stated that

5

after-the-fact scrutiny by the courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." . . . "A grudging or negative attitude by reviewing courts toward warrants," . . . is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner."

*State v. Thomas*, 187 W. Va. 686, 694, 421 S.E.2d 227, 235 (1992) (citations omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

In syllabus point 2 of *Lilly*, we held that "[a] search warrant affidavit is not invalid even if it contains a misrepresentation, if, after striking the misrepresentation, there remains sufficient content to support a finding of probable cause. Probable cause is evaluated in the totality of the circumstances." 194 W. Va. at 598, 461 S.E.2d at 104. If the erroneous date included in the first sentence of the affidavit is struck, the affidavit provides, pertinently, that

within the past [forty-eight] hours [Agent Castro] met with a Cooperating Individual . . . . This CI advised your affiant of controlled substance distribution from [petitioner]. Your affiant states that Agents with the [Task Force] met with [the CI] at a secure location. The CI was provided with an amount of U.S. Currency by the [Task Force]. The CI went to [petitioner's home] and purchased heroin from [petitioner]. After the controlled purchase the CI turned the purchased evidence over to your affiant. This controlled purchase was monitored by [Task Force] Agents.

Agent Castro further expressed that he sought the EIO for twenty days to record future controlled purchases from petitioner, and the affidavit was "[t]aken to and sworn before me this day 7th day of August, 2017." Interpreting this affidavit in a commonsense manner and considering the totality of the circumstances, the affidavit includes sufficient content to support a finding of probable cause and does not suffer from a "staleness" problem. The affidavit—"taken to and sworn" on August 7, 2017—specifies that in the past forty-eight hours, the CI made a controlled drug buy from petitioner. The Application for Electronic Interception Order—also "[t]aken, subscribed and sworn" on August 7, 2017—states that "on the 5th day of August, 2017, . . . the felony . . . offense[] of Delivery of Controlled Substance(s) has, is currently or will be committed" by petitioner. Considering the totality of the circumstances, the April 18, 2017, date was clearly a typographical error, and it does not render the information contained in the affidavit stale.

We also find no merit to petitioner's argument that the affidavit lacks information to demonstrate the basis of the CI's knowledge.

[U]nder the totality of the circumstances announced in [*Illinois v. Gates*, 462 U.S. 213 (1983)], "veracity" and "basis of knowledge" are no longer viewed as independent prerequisites to a finding of probable cause: "[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong

6

showing as to the other, or by some other indicia of reliability" *such as corroborating evidence gathered by law enforcement*.

*Lilly*, 194 W. Va. at 603, 461 S.E.2d at 109 (emphasis added) (citation omitted). The Task Force here monitored and participated in the controlled drug buy from petitioner on August 5, 2017. The Task Force met with the CI prior to the purchase; provided her with money; and, after her purchase of heroin from petitioner, received the "purchased evidence" from the CI. Thus, the Task Force's participation in this controlled purchase corroborated the CI's claim that petitioner was distributing controlled substances and provided information sufficient for a finding of probable cause.

Petitioner next assigns as error the circuit court's failure to strike Mr. Edwards for cause during jury selection. Petitioner does not, however, recite any law or structure an argument to support this claim.

We have held that

> [a] trial court's failure to remove a biased juror from a jury panel . . . does not violate a criminal defendant's right to a trial by an impartial jury if the defendant removes the juror with a preemptory strike. In order to obtain a new trial for having used a peremptory strike to remove a biased juror from a jury panel, a criminal defendant must show prejudice.

Syl. Pt. 6, in part, *State v. Benny W.*, 242 W. Va. 618, 837 S.E.2d 679 (2019) (citation omitted). Petitioner has not shown—nor does he even argue—that he was prejudiced by having to use a peremptory strike on Mr. Edwards. Instead, petitioner merely recounts Mr. Edwards's statements to the court during jury selection and the fact that the court denied his motion to strike the juror for cause. Again, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim." *Robert Michael B.*, 195 W. Va. at 765, 466 S.E.2d at 833.

In petitioner's fifth assignment of error, he argues that the court should have dismissed Count 7 of the indictment, which corresponded to State's Exhibit 8. State's Exhibit 8, a substance purchased by the CI from petitioner on August 8, 2017, was not tested by the Crime Lab; therefore, it was not confirmed by Crime Lab testing to be a controlled substance.[6] Petitioner's argument in support, however, centers on the admissibility of Ms. Neu's testimony: "It is unfair and contrary to the holding in *Daubert* to allow an expert to testify to the identification of a controlled substance without performing any tests on the alleged controlled substance."[7]

---

[6] Ms. Neu testified that Crime Lab policy limits the number of items she can test.

[7] Indeed, the only law cited by petitioner in support of his argument is our holding in syllabus point 6 of *Gentry v. Mangum*, 195 W. Va. 512, 466 S.E.2d 171 (1995), pertaining to the admissibility of expert witness testimony dealing with "scientific knowledge":

(continued . . .)

During Ms. Neu's testimony, the State asked, "Based on your observations of [State's Exhibit 8] to the extent that you review them, was that consistent, was it consistent the way that it looked, its color, its consistency with [State's Exhibits] 6 and 7?" Petitioner objected to Ms. Neu's "qualifications to render an opinion on that matter," which the court overruled. Petitioner did not raise a *Daubert* challenge to Ms. Neu's testimony. "This Court's general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered [for] the first time on appeal." *State v. Jessie*, 225 W. Va. 21, 27, 689 S.E.2d 21, 27 (2009) (citation omitted). And "[o]bjections on non-jurisdictional issues, must be made in the lower court to preserve such issues for appeal." *State v. Shrewsbury*, 213 W. Va. 327, 334, 582 S.E.2d 774, 781 (2003). "The necessity for precise and specific objections" has been previously acknowledged by this Court, *see id.* (citing syl. pt. 2, *Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996)), and the principle is embodied in Rule 103 of the West Virginia Rules of Evidence, which requires that a timely objection "stat[ing] the specific ground" be made to preserve a claim of error. Because petitioner's objection was not founded upon *Daubert*, he has not preserved this issue for appeal.

To the extent that petitioner argues generally that Ms. Neu was not qualified to or otherwise should not have been permitted to testify as to the identification of State's Exhibit 8, we note that she did not affirmatively identify the substance as heroin. To the contrary, Ms. Neu testified that without performing a preliminary and confirmatory test on a substance, she cannot identify a substance as heroin. Because she did not perform those tests on State's Exhibit 8, she could only state that the substance was visually consistent with the substances tested and confirmed to be heroin. Ms. Neu also testified that part of her testing includes visual observation:

---

> The question of admissibility under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993), . . . only arises if it is first established that the testimony deals with "scientific knowledge." "Scientific" implies a grounding in the methods and procedures of science while "knowledge" connotes more than subjective belief or unsupported speculation. In order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method. It is the circuit court's responsibility initially to determine whether the expert's proposed testimony amounts to "scientific knowledge" and, in doing so, to analyze not what the experts say, but what basis they have for saying it.

But we further note that, similar to his briefing of other assignments of error, petitioner asserts that admitting Ms. Neu's testimony was "unfair and contrary to the holding in *Daubert*" without offering supporting analysis or argument. Conclusory and unsupported arguments do not preserve issues for appeal. *See Robert Michael B.*, 195 W. Va. at 765, 466 S.E.2d at 833 (stating that "skeletal arguments" do not preserve issues for appeal).

"I visually look at the sample and that is how I list it out in my itemization, and I look to see visually, kind of get an idea of how to go about my testing." "Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." Syl. Pt. 3, *State v. Dietz*, 182 W. Va. 544, 390 S.E.2d 15 (1990) (citation omitted). We find no abuse of the court's discretion in permitting Ms. Neu to testify that State's Exhibit 8 was visually consistent with the substances she tested and confirmed to be heroin.

Lastly, petitioner argues that the court erred in denying his motion for judgment of acquittal on Count 7 of the indictment given Ms. Neu's inability to confirm that the substance comprising State's Exhibit 8 was a controlled substance. The court, noting that the CI opined that the substance was heroin and that Agent Castro testified that it appeared to be heroin, found that the issue could be submitted to the jury. Petitioner argues that

> [i]f controlled substances are now admissible in the State of West Virginia on the word of a confidential informant who is an admitted drug addict and currently incarcerated on federal drug charges then the notion of justice and a fair trial for the [d]efendant and the rules of evidence have been set back decades.

We review this assignment of error de novo:

> The trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996). Petitioner's argument focuses on the propriety of admitting lay witness testimony on the issue of whether the substance comprising State's Exhibit 8 was heroin. This testimony was both proper and sufficient to support a conviction on Count 7. "According to Rule 701 of the *West Virginia Rules of Evidence*, it is within the trial court's discretion to allow lay witnesses to offer opinion testimony concerning the identity of a controlled substance." Syl. Pt. 4, *State v. Haller*, 178 W. Va. 642, 363 S.E.2d 719 (1987).[8] And "[t]he determination of whether a witness has sufficient knowledge of the material in question so as to be qualified to give his opinion is largely within the discretion

---

[8] Rule 701 of the West Virginia Rules of Evidence provides that

> [i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

of the trial court, and will not ordinarily be disturbed on appeal unless clearly erroneous." *Id.* at 643, 363 S.E.2d at 720, syl. pt. 3.

The CI's knowledge of opioids stemmed from her sixteen-year battle with them. She identified the substance contained within State's Exhibit 8 as heroin, and she testified to being able to distinguish "between carfentanil, heroin, angel dust, any of that": "Well, [I can identify] by sight and smell, touch. I did not try it, because, of course, I'd been clean for a while, but after sixteen years in the field of doing drugs, yes, I can tell."

Plus, Agent Castro, who had approximately fifteen years of law enforcement experience and was assigned to the DEA's advice task force at the time of petitioner's trial, testified that State's Exhibit 8 contained "[a]pproximately one gram of heroin." He based that testimony on his experience and training as a law enforcement officer, and he testified that he has previously looked at a controlled substance, identified it as heroin, and had that identification confirmed by laboratory testing. Ms. Neu also testified that State's Exhibit 8 was consistent with State's Exhibits 6 and 7, which were confirmed to be heroin. This evidence was sufficient for a jury to find guilt beyond a reasonable doubt, and we find no error in the court's denial of petitioner's motion for judgment of acquittal as to Count 7.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** July 30, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman